[Civ. No. 3754.   Fourth Dist.   Mar. 14, 1949.]

FRED LESSER, Respondent, v. HARRY M. McCULLOUGH
et al., Appellants.

Mack, Werdel & Bianco and Mack & Bianco for Appellants.

Dorris, Fleharty & Phillips for Respondent.

GRIFFIN, J.—Plaintiff brought this action against defendant Harry M. McCullough and Harry M. McCullough, Jr., who was the driver of his father's car, for damages as a result of an automobile accident involving the death of plaintiff's minor son, Fred Lesser, Jr., then aged 17 years. The verdict of the jury resulted in a judgment for plaintiff and against the defendant father for $5,000, and against the defendant son for the sum of $6,000.

South H Street runs southerly from the city limits of Bakersfield. It is a straight level road, paved with asphalt, and has a dim white center line at the point of the accident. The distance from the center line to the westerly edge of the pavement is 9 feet. From the edge of the pavement westerly the roadway consists of sand, gravel and a little oil for about 13 feet. The roadway is bordered by lawns at the property line of the adjacent homes. In front of one of these homes and near the property line is located a mailbox and tall telephone pole. There are no paved sidewalks. The easterly side of South H Street is parallelled by an irrigation canal. Cecil Bruner Drive is the first street south of the scene of the accident and Belle Terrace is the first street north of that point. Each street formed a "T" intersection with South H Street.

Fred Lesser, Jr., was walking south on South H Street somewhere near the westerly edge of the roadway when he was struck and killed by defendants' car proceeding in the same direction. He was dressed in dark blue "Levi's," light blue sweater, and brown leather jacket. The night was dark. It had been raining, but was not at the time. Young McCullough's deposition was read into evidence. From it it appears that he was a truck driver by occupation and lived a few blocks south of Cecil Bruner Drive. He borrowed his father's car to go on an errand. As he was returning he drove south on South H Street in a "drizzling rain." His 1936 Ford sedan was equipped with only one windshield wiper on the side of the driver's seat. The lights were on low beam.

As he approached the scene of the accident the lights of two cars coming north blinded him. He was driving about 25 miles per hour with his left wheels about 18 inches west of the center line. Driving conditions were very difficult. He said he did not see the boy at all because he was watching the white line and the oncoming cars; that when he felt the impact he went home, "hollered" for his mother to call an ambulance. His father returned with him to the scene of the accident. Fred Lesser, Jr., was found lying dead near the mailbox and in the dirt. The crown of the right front fender on defendants' car was impacted and the right headlight was turned sideways a little. At the coroner's inquest he testified that the boy's body was lying about 6 or 7 feet off the pavement when he returned. Plaintiff's witness, Mrs. Webster, who lived on South H Street where the mailbox was located, testified that as she was going into her house she saw the boy "coming walking on the shoulder by the highway," which she described as a "pathway" about 9 or 10 feet away from the west edge of the highway "out here towards the pavement" and about 33 feet north of her driveway; that she could hear his shoes "squeaking in the sand"; that she looked north on South H Street, saw the lights on the car "coming fast"; that before she could open the door she heard the impact of the car striking the body of the boy; and that she "turned around and saw what had happened and the car was leaving." She testified that there was no other traffic in view at the time of the accident and she could not tell whether the car that struck the boy was on the pavement or over on the 9-foot strip, but the pathway adopted by the boy was straight south and parallel with the center line of South H Street and the body was carried to a point about two steps west of the pavement and close to, but a little south of, the mailbox. According to the evidence the boy's head was pointed northerly and the body was lying parallel with the center line of South H Street.

Traffic officers testified that they examined the surface of the roadway and found no marks of any kind; that they examined defendants' car and found it was in safe working order; that this particular point on the roadway was outside of a business or residence district.

The principal point raised on this appeal is that, under the evidence, decedent was guilty of contributory negligence as a matter of law which proximately contributed to his death

because it is conclusively shown that he was walking upon a roadway other than close to the left-hand edge thereof, in violation of section 564 of the Vehicle Code.

Apparently a blackboard was used by the several witnesses in explaining the location of the body, the conditions of the roadway, etc., and much of their testimony cannot be fully interpreted because of the failure to produce a photostatic copy of the diagram referred to. Defendants should have had such diagram photographed and reproduced in the record on appeal if they wished to rely on testimony referring to the diagram as substantiating their argument. ■ Evidence of the location of an object or particular pathway or condition dependent upon testimony which locates it by means of a diagram not in the record must be assumed to have been most favorable to the view that supports the findings or verdict. (*Jackson* v. *Southern Pacific Co.*, 11 Cal.App. 101 [103 P. 1098]; *Haase* v. *Central Union High School District*, 27 Cal. App.2d 319 [80 P.2d 1044]; *Pascoe* v. *Payne*, 124 Cal.App. 528 [12 P.2d 1091].)

■ It is defendants' contention that the boy must have been on the paved portion of the roadway because Harry McCullough, Jr., was driving about 18 inches from the center line. It is apparent that the question as to where the boy was walking at the time, whether he was in fact violating sec. 564 of the Vehicle Code, and whether such violation, if any, contributed proximately to the cause of his death, were factual questions for the determination of the jury. (*Summers* v. *Dominguez*, 29 Cal.App.2d 308, 311 [84 P.2d 237]; *Scalf* v. *Eicher*, 11 Cal.App.2d 44, 52 [53 P.2d 368].)

Defendants attempt to distinguish the cited cases because it is claimed that in those cases, unlike the present case, there was a conflict in the evidence as to where the deceased was walking, or because there was no evidence to dispel the presumption of due care. It is apparent from the evidence and circumstances related in the instant case that there was a conflict in this regard and that the evidence produced by the plaintiff did not, as a matter of law, dispel the presumption of ordinary care. (*Lam Ong* v. *Pacific Motor T. Corp.*, 16 Cal. App.2d 274 [60 P.2d 480]; *Duehren* v. *Stewart*, 39 Cal.App.2d 201 [102 P.2d 784].)

■ The court gave, at plaintiff's request, an instruction on the subject of presumption of due care, as approved in *Gorman* v. *County of Sacramento*, 92 Cal.App. 656 [268 P. 1083]; and *Little* v. *Yanagisawa*, 70 Cal.App. 363 [233 P. 357].

The only objection maintained is that since the evidence shows that the deceased was guilty of contributory negligence as a matter of law, it was error to give such an instruction, citing *Westberg* v. *Willde*, 14 Cal.2d 360, 365 [94 P.2d 590]. The former determination of this question adversely to defendants' contention disposes of the objection. (*Casalegno* v. *Leonard*, 40 Cal.App.2d 575 [105 P.2d 125]; *Shannon* v. *Thomas*, 57 Cal.App.2d 187 [134 P.2d 522].)

▮ The last claim of error involves an instruction given by the court, at plaintiff's request. One instruction was properly given in the language of section 81 of the Vehicle Code defining a "highway." Then follows the objectionable one defining a "roadway" as being that portion of the highway "improved, designed *and* ordinarily used for vehicular travel." Section 83 of the Vehicle Code uses the word *or* rather than the word *and*. Plaintiff concedes that the word *and* was inadvertently used instead of *or* but argues that this inadvertence did not amount to prejudicial error because there was no contention by defendants that the pathway upon which plaintiff claims the deceased was walking was "ordinarily used for vehicular travel." This instruction was followed by an instruction in the language of section 564 of the Vehicle Code that "No pedestrian shall walk upon any roadway outside of a business or residence district otherwise than close to his left hand edge of the roadway." The jury was then instructed: "The terms 'highway' and 'roadway' therefore do not have the same meaning and are not synonymous. The law does not require a pedestrian to walk upon the left-hand side of the highway. It is only the walking upon the left-hand side of that portion of a *highway* that is improved, designed, *and* ordinarily used for vehicular travel that is prohibited by section 564 of the Vehicle Code." The use of the conjunctive rather than the disjunctive in defining a roadway under section 83 of the Vehicle Code was error. (*Robinson* v. *Southern Pacific Co.*, 105 Cal. 526, 543 [38 P. 94, 722, 28 L.R.A. 773].) However, the instruction complained of, when fairly construed, could only mean to the jury that it was the walking upon the *roadway* that brought section 564 of the Vehicle Code into operation, and that the *roadway* was that portion of the highway ordinarily used for vehicular travel. We do not believe that the jury was misled, to defendants' prejudice, by the error complained of or that its verdict would have been any different had the instruction been given in the exact language of the section of the Vehicle

Code involved, or that the giving of the instruction in the form mentioned was so prejudicially erroneous as to require a reversal of the judgment. (*Shuey* v. *Asbury,* 5 Cal.2d 712, 713 [55 P.2d 1160]; *Guay* v. *American President Lines,* 81 Cal.App.2d 495 [184 P.2d 539]; *Barlow* v. *Crome,* 44 Cal.App. 2d 356 [112 P.2d 303]; *Astone* v. *Oldfield,* 67 Cal.App.2d 702 [155 P.2d 398]; *Sills* v. *Forbes,* 33 Cal.App.2d 219 [91 P.2d 246].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.