[Civ. No. 16777.   Second Dist., Div. Two.   May 27, 1949.]

PAUL POMERANTZ, Respondent, v. BRYAN MOTORS, INC. (a Corporation), Appellant.

Tripp & Callaway and Hulen C. Callaway for Appellant.

Joseph Henry Wolf and Henry E. Kappler for Respondent.

MOORE, P. J.—Plaintiff's automobile having need of mechanical improvement, he left it with defendant's service department. Upon his return several hours later he engaged in conversation with the mechanic who had made the repairs. While the workman was explaining that he had installed a new fuel pump he dropped the old one upon plaintiff's great toe. Judgment was entered upon the verdict for plaintiff from which comes this appeal.

Appellant assigns as error the court's ruling which excluded evidence of appellant's maintenance of a waiting room for customers in order that it might argue that respondent as a business visitor should have remained in a position of safety instead of proceeding to the hazardous area of the garage where repairs are made. There are two answers to this contention: (1) it was immaterial because proof of a custom in the garage had not been brought to the attention of respondent (*State Compensation Insurance Fund* v. *Allen,* 104 Cal.App. 400, 413 [285 P. 1053]); (2) its exclusion was harmless since appellant's witness Cobb had testified to the very fact to be proved by the proffered testimony and Wilson who repaired respondent's car had testified that it was not customary for patrons to visit the section of the garage where mechanics were at work on automobiles. Under such circumstances no prejudice could have been suffered by appellant. In addition there is no evidence in the record that respondent knew that patrons were not permitted in the division of the garage used by the mechanics. Indeed, a contrary inference may readily be drawn from the testimony of Wilson that upon respondent's return for his car they engaged in considerable conversation relating to the necessity for installing the fuel pump which according to the witness was extended by a discussion of the need of new spark plugs. This conversation occurred in that part of the room devoted to repairs only. If respondent was unaware of the general custom of excluding patrons from the garage proper and if appellant failed to apprise him of the rule, his presence there could not have been in an area beyond the scope of his invitation.

Also, respondent was a frequenter of the garage. Wilson testified that he had seen respondent in the garage from six to twelve times prior to the accident. Such common use of the area by customers in general and by respondent in particular demonstrates the futility of the assertion that the area was not open to patrons. (*State Compensation Insurance Fund* v. *Allen, supra.*) But the contention is rendered unfounded by the witness Terry, service salesman, who deposed that at the time of the accident there were "three men on the floor who might have waited on any customer." ▇ Moreover, relative to the maintenance of a waiting room and of respondent's asserted trespass, the entirety of the evidence was not included in the record before this court. Diagrams were drawn on the blackboard, witnesses made their marks upon such diagrams indicating the locations of the happenings referred to in the testimony. All diagrams and the marks upon them must be presumed to have been favorable to respondent's thesis and furnishes substantial support to the judgment. (*Lesser* v. *McCullough*, 90 Cal.App.2d 586, 589 [203 P. 2d 832].)

▇ Appellant contends that the court erred in refusing to instruct the jury to the effect that if respondent went beyond the limits of his invitation he ceased to be a business visitor. If this was error, appellant was not prejudiced thereby since a landowner may be liable for failure to exercise ordinary care toward a licensee or an invitee. (*Newman* v. *Fox West Coast Theatres*, 86 Cal.App.2d 428, 432 [192 P.2d 706].) ▇ Regardless of appellant's contentions that respondent was negligent in not having remained in the "waiting room" and that it was prejudiced by the rejection of its offered proof, the finding of the mechanic's active negligence is reasonably justified. He certainly knew of respondent's presence at the time he held the pump and conversed concerning it. Consequently, whether the customer's waiting room was maintained and respondent should have remained therein, whether he was a licensee or invitee, the pump struck respondent's foot as the result of the negligence of appellant's agent and for the damages suffered the principal is liable. (*Oettinger* v. *Stewart*, 24 Cal.2d 133, 139-140 [148 P.2d 19, 156 A.L.R. 1221]; *Demmon* v. *Smith*, 58 Cal.App.2d 425, 432 [136 P.2d 660].)

▇ The following instruction is assigned as error:

"It is, of course, as evident to you jurors as it is to the court that in this case either the plaintiff, Pomerantz, or the defend-

ant's witness, Wilson, has wilfully committed perjury of the grossest nature.

"One who commits perjury deliberately seeks to thwart justice and the orderly administration of the law—and to the extent that perjury succeeds, to that extent courts of justice are brought into disrepute.

"Frequently jurors have the responsibility of deciding between conflicting but honest statements of different witnesses. In such cases it is possible to consider the testimony of the different witnesses without reaching the conclusion that any one of them has intentionally perjured himself by giving false testimony upon the witness stand. However, in this case you jurors must commence your deliberations, knowing that one of the two vital witnesses has deliberately lied and has done so with the undoubted purpose of deceiving you as to whether or not the alleged accident actually happened.

"You have a greater responsibility than most juries in deciding this case, since it is entirely possible that the verdict you render may be considered as practically amounting to an informal accusation of perjury against either Mr. Pomerantz or Mr. Wilson. However, I am confident you will not permit such realization to deter you to any extent from fearlessly considering the issues which it is your duty to determine and then reaching a decision as to the facts that will be based wholly upon the evidence you find worthy of credence.

"In your consideration of this case, keep in mind that perjury strikes at the very foundations of justice and that your verdict, based upon the credible evidence and the law given you in these instructions will have effect not only in upholding the dignity of the courts but also in reflecting credit upon the American jury system in which we all believe.

"Finally in this connection, let me urge that before taking your first ballot in the jury room you give long, close and prayerful consideration to this most important question as to the veracity of witnesses."

It is contended that such instruction was prejudicial in that it "invaded the province of the jury, presented a false issue, and prevented the jury from reconciling the testimony of the witnesses." Under the guidance of the Constitution (art. VI, § 4½) a reviewing court must abstain from reversing a judgment "on the ground of misdirection of the jury ... unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." It

is not suggested that the court in the instant cause erred in stating the substantive law. The assignment pertains primarily to the diction of the court, used to clothe its thought.*

■ Not only is affirmance required by section 4½ but the criticized instruction gains a status of high respectability by the application of another constitutional provision adopted in 1934. In that year the people added section 19† to article VI of the organic law. By that enactment the ancient prerogative of the trial court was reestablished whereby it is permitted to comment on "the credibility of the witnesses" as well as upon their "testimony." By that section a greater latitude of discretion was restored to the trial courts of which they had been deprived by the Constitutions of 1849 and subsequently. (6 So.Cal.L.Rev. (No. 1) p. 57.) No formula can be derived by which such comment may be cast. The facts of each case must determine the nature and extent of the court's observations and the diction and phraseology appropriate thereto. It is not confined to a colorless summation of facts (*People* v. *Patubo,* 9 Cal.2d 537, 542 [71 P.2d 270, 113 A.L.R. 1303]) so long as the jury are directed that notwithstanding such comment, they must determine the credibility of every witness and the weight to be accorded to his testimony. Under section 19 the court may even comment upon the guilt or innocence of one accused of crime without exceeding the limits of discretion (*People* v. *Ottey,* 5 Cal.2d 714, 729 [56 P.2d 193]) and without prejudicing the rights of the accused. Since the court's privilege of commenting is no less restricted in civil than in criminal actions (*Rivera* v. *Goodenough,* 71 Cal.App.2d 223, 234 [162 P.2d 498]), where there is a direct conflict in the testimony of the only two witnesses to the paramount fact at issue, sound logic and correct reasoning compel such construction of the

---

*The authorities cited by appellant as condemnatory of the criticized instruction (*People* v. *Brow,* 90 Hun 509 [35 N.Y.S. 1009]; *State* v. *Chavez,* 19 N.M. 325, 329-330 [142 P. 922, Ann.Cas. 1917B 127]; *Smith* v. *Lehigh Valley R. Co.,* 170 N.Y. 394 [63 N.E. 338]; *Hunt* v. *Becker,* 173 App.Div. 9 [160 N.Y.S. 45]; *Beers* v. *Metropolitan St. Ry. Co.,* 84 N.Y.S. 785; *Breslin* v. *Donnelly,* 81 N.J.L. 691 [80 A. 474 Ann.Cas. 1912D 278]) are from jurisdictions where the California Constitution is not operative.

†Section 19. "The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."

section as will permit the trial court by virtue of its intimate and peculiar knowledge of the witnesses to advise the jury that one of the witnesses has committed perjury so long as it is left to the jury to determine the guilty party.

█ Appellant's final assignment of error is that certain other instructions, though not complained of as erroneous, are in conflict with the instruction on perjury. Two of them were given at appellant's request and it cannot therefore complain as to them. (*People* v. *Weston,* 169 Cal. 393, 398 [146 P. 871].) █ The other, given on the court's own motion, was as follows: "You are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony." This is a traditional, stock instruction, clearly free from error, is favorable to appellant and therefore is not ground for reversal.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.